UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE TARNOW,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-cv-2115-EFB (SS)

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for Disability and Supplemental Security Income disability benefits under Title II of the Social Security Act pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), ECF No. 1 Pending before the court are the parties' cross-motions for summary judgment. ECF Nos. 11, 17.[1] For the reasons provided below, plaintiff's motion is denied and defendant's motion is granted.

////

////

////

////

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 7.

## I. Background

On February 16, 2023,[2] plaintiff filed an application for Social Security Income (SSI) disability benefits under Title II of the Social Security Act. Administrative Record (AR) 200-201.[3] He alleged disability due to poor vision, PTSD, anxiety, depression, high blood pressure, back problems, neuropathy, extreme headaches and sleep apnea. AR 108. Plaintiff's application was denied on December 12, 2023, AR 108-111, and his request for reconsideration was denied on October 18, 2024. AR 113-116.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). AR 112. A hearing was held on April 9, 2025, at which plaintiff testified. AR 17; *see also* AR 40-72 (hearing transcript). By written decision on May 29, 2025, the ALJ found plaintiff not disabled relative to his claim for SSI disability benefits. AR 14-29 (hearing decision).

Plaintiff sought review by the Appeals Council, AR 194-196, which denied review on November 18, 2024, making the ALJ's decision final for purposes of judicial review. AR 1-8. Plaintiff initiated this action on July 28, 2025.

## II. Legal Standard

### A. The Disability Standard

To qualify for disability insurance benefits under Title XVI of the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §§ 404.1520,

[2] Elsewhere, the record indicates that this application was submitted to the Social Security Administration on February 13, 2023. *See* AR 17. The application itself bears the date February 16, 2023. Nonetheless, the distinction appears immaterial to the issues raised in the pending motions.

[3] Defendant lodged the administrative record on September 25, 2025. ECF No. 8.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

416.920(a)(4); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Id*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d) (RFC is not a medical opinion); 20 C.F.R. § 416.946 (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

////

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Id.*

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely;

rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

**III. The ALJ's Findings of Fact and Conclusions of Law**

In his May 29, 2025 decision, the ALJ found plaintiff not disabled on his application for benefits under Title II. The ALJ issued findings as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2028.

2. The claimant has not engaged in substantial gainful activity since December 29, 2022, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines; left shoulder moderate osteoarthritis; post-traumatic stress disorder; anxiety; depression; and a history of retinal detachment with bilateral pseudophakia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except stand and walk for four hours total during an eight-hour day and sit for six hours total during an eight-hour day. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant needs to avoid hazards, such as unprotected heights and moving machinery. The work environment should have no more than moderate noise level, as defined by the SCO. He can understand, remember, and carry out simple work instructions. The claimant can have occasional interaction with supervisors, co-workers, and the public. He can maintain concentration for two-hour intervals. He can also have changes to a routine work environment.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 10, 1970, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2022, through the date of this decision (20 CFR 404.1520(g)).

AR 19-33.

## IV. Analysis

Plaintiff raises four issues on review. ECF No. 11 at 8-14. First, that the ALJ misapplied the medical-vocational profiles and erred in seeking a vocational expert's (VE's) testimony regarding light duty jobs available to plaintiff and/or misunderstood or misapplied the VE's testimony. ECF No. 11 at 8-9. Second, that the ALJ failed to account for plaintiff's claimed impairments of low vision and/or sensitivity to light in assessing plaintiff's residual functional capacity (RFC). *Id*. at 9-11, 14. Third, that the ALJ failed to include plaintiff's claims of diminished visual acuity in hypotheticals posed to the VE, and relied light on duty jobs identified by the VE which actually require visual acuity that plaintiff lacks. *Id*. at 11-13. Fourth, that plaintiff's subjective statements were discounted inappropriately.[5] *Id*. at 14. The court concludes that plaintiff has not shown that reversal is merited.

### A. The ALJ's Analysis of Medical-Vocational Profiles and Jobs Available

The ALJ found that plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) but with limitations of standing and walking for up to four hours total during an eight-hour day and sitting for a total of six hours during an eight-hour day. AR 24. The ALJ then considered this RFC together with plaintiff's age, education, and work experience and within the framework of the medical-vocational profiles together with testimony from a VE and concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. AR 32-33. Because of plaintiff's combined exertional and non-exertional impairments, the ALJ based his conclusion in part on the VE's testimony concerning the availability of jobs to a person with plaintiff's RFC. AR 33. Plaintiff disputes whether the ALJ correctly interpreted

[5] Plaintiff inserts a "credit as true" argument under a separate heading, but it appears to be further argument in support of this contention.

and relied upon and the VE's testimony. Plaintiff also argues that the ALJ erroneously applied the medical-vocational profiles of 20 C.F.R., Part 404, Subpart P, Appendix 2. Plaintiff has not shown that the ALJ incorrectly erred in seeking the testimony of the VE or misunderstood that testimony. Nor has he shown that the ALJ misapplied the medical-vocational profiles.

The medical-vocational profiles, also known as "grids"

> ... present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. *Tackett* [*v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)]. The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with[in] the appropriate table is determined by applying a matrix of four factors identified by Congress – a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *Id*. If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled. *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-1115 (9th Cir. 2006). Plaintiff argues that "[t]he use of the medical-vocational profiles is not discretionary." ECF No. 18 at 3 (citing *Lounsburry*). But this is an incomplete description of how the medical-vocational profiles are to be used. Work impairments may be categorized as exertional, nonexertional, or a combination of both. 20 C.F.R. § 404.1569a(a). When a claimant's only limitations are exertional, the question of whether the claimant is disabled may be decided solely on the basis of the medical-vocational profiles. *Lounsburry*, 468 F.3d at 1115. But if a claimant has both exertional and non-exertional limitations and is not disabled based solely on exertional limitations, the ALJ may also considers other evidence such as the testimony of a VE. *Id*. at 1115-1116; 20 C.F.R. § 404.1569a(d); *see also Thomas*, 278 F.3d at 960 (when a claimant's limitations do not fit cleanly within a disability category on the medical-vocational grid, the ALJ may "consult[] a vocational expert regarding whether a person with claimant's profile could perform substantial gainful work in the economy" (citation omitted)).

Here, the ALJ found that it was not possible to reach a determination of "disabled" or "not disabled" based solely on where plaintiff's exertional limitations fall within the medical-vocational profiles in Appendix 2. AR 32-33. Plaintiff has not shown that a finding of disability

could have been made based solely on the medical-vocational profiles. In these circumstances, it was permissible for the ALJ to turn to the testimony of the VE.

The VE testified that plaintiff could perform the requirements of subsets of light work jobs. AR 33. It was the VE's opinion that, given plaintiff's RFC, he could perform 25% of jobs in light work occupations such as routing clerk, price marker, and small parts assembler, and even though plaintiff is limited to that 25% subset, a significant number of such jobs exist in the national economy. *Id*. Based on that testimony, the ALJ found that plaintiff has the RFC to perform a significant number of jobs in the national economy.

Plaintiff makes a puzzling argument for why he maintains the ALJ's finding is not supported by substantial evidence:

> Here the VE finds Mr. Tarnow is limited to 25% of the jobs in the light work category because he is limited to four hours of standing. The VE told the ALJ at the hearing that a four-hour standing limitation erodes the light work by 70% to 75%. The Vocational Expert testified at the hearing "there would be a reduction in the numbers due to the fact that the standing and walking it's not the full capacity of light work, for example, in the routing clerk, the jobs would be reduced by 75%" (AR 71). A four hour stand limitation conflicts with being able to work substantially all the jobs in the light work exertional category. The ALJ finds Mr.Tarnow would be disabled if he is limited to sedentary work.
>
> The VE said "only 25% of these jobs are available. That's a better way of saying it." (AR 69). Mr. Tarnow cannot work the full range of light work, substantially all because he can only work 25% of the jobs. As such, SSR 83-9[6] directs the ALJ to find Mr. Tarnow unable to perform substantially all of the jobs at the light exertional capacity. Therefore, the ALJ's decision is not supported by substantial evidence.

ECF No. 11 at 9. The best the court can discern from this assertion is an argument that a

---

[6] The reference to "SSR 83-9" appears to be "Social Security Ruling 83-9 (Cumulative Edition 1983)," which is a ruling from the Social Security Administration regarding the amount of public disability benefit payable to a public employee. *See* Soc. Sec. Rep. ¶ 16,732 (C.C.H. 2018), 1986 WL 1348928 (Apr. 1, 1986). Plaintiff does not explain how this Social Security Ruling is relevant here.

It is possible that plaintiff's intened to cite to SSR 83-11, which respondents cite in their explanation of how the grids are to be applied. *See* ECF No. 17 at 18. SSR 83-11's stated purpose is to "clarify policies for determining whether a table rule in Appendix 2 of Subpart P, Regulations No. 4, applies to direct a conclusion as to "Disabled" or "Not disabled." 1983 WL 31252, at *1 (Jan. 1, 1983). Even if plaintiff intended to cite to SSR 83-11 he nevertheless fails to explain how SSR 83-11 supports his argument. Nor does the court find support in SSR 83-11 for plaintiff's argument that it would "direct[] the ALJ to find [plaintiff] unable to perform substantially all of the jobs at the light exertional capacity."

limitation to four hours of standing means that plaintiff cannot perform light work activity which, in turn, means that he is unable to perform any light work jobs. But that is not what the VE testified. Nor does that claim accurately state the RFC as found by the ALJ. Rather, the VE's testimony was that, given the RFC as determined by the ALJ and stated to the VE at the hearing, there would still be 25% of the light work category jobs in the economy available to plaintiff.

Plaintiff's proposition that a limitation to four hours of standing would make plaintiff ineligible for all light duty jobs simply misstates the VE's testimony and lacks merit. The ALJ explained in some detail that the VE identified the data sources the VE relied on and provided her general approach to estimating job numbers. The ALJ further noted that the VE "used the DOT[7], the SCO[8], SOC[9]…" together with plaintiff's experience, knowledge, and training. AR 33. The ALJ accepted the VE's testimony "in accordance with SSR 24-3p." *Id.* SSR 24-3p addresses the topic of "Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions." 2024 WL 4988840; 99 FR 97158-01. SSR 24-3p was issued December 6, 2024 and it applies to all claims that were pending on that date, including plaintiff's application which was filed on February 16, 2023. It supersedes SSR 00-04p.

Plaintiff might be suggesting that the DOT's occupational requirements would have classified him as fully disabled and unable to work any light work jobs, and/or that SSR 00-4p might have compelled a different analysis regarding application of the DOT occupational requirements or otherwise might have compelled a different result in his case.[10] But if this is

[7] According to Social Security Ruling (SSR) SR 24-3p, the acronym DOT references the Dictionary of Occupational Titles.

[8] The court construes the acronym "SCO" as referencing the "Selected Characteristics of Occupations" which is a companion volume to the U.S. Department of Labor's Dictionary of Occupational Titles. *See* https://en.wikipedia.org/wiki/Selected_Characteristics of Occupations.

[9] According to SSR 24-3p, the acronym SOC references the Standard Occupational Classification system of the Office of Management and Budget.

[10] Plaintiff attached the DOT Occupational Requirements to his motion. ECF No. 11 at 18-24. But his only reference to it is in relation to visual acuity requirements, which are discussed below. *See id.* at 12 ("All three jobs offered at Step Five require visual acuity of 20 feet, defined by the DOT and the Department of Labor's Revised Handbook (RHAJ) (Exhibit A).").

plaintiff's argument – and regardless whether the DOT would actually support his contention – it is unpersuasive because the DOT has never been the conclusive standard. "Ninth Circuit case law that predates SSR 00-04p instructs not that the analysis ends with the DOT, but rather that the DOT raises a rebuttable presumption as to job classification." *Humphries v. Bisignano*, No. CV-25-02507-PHX-SPL, 2025 WL 4678823 at *7 (D. Ariz. Dec. 12, 2025) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). And SSA 24-03p "no longer require[s] our adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." 2024 WL at 97159; *see Humphries*, 2025 WL 4678823, at *7. It is sufficient that the ALJ shows "how the record contains persuasive evidence to support [a] deviation" from the DOT. *Humphries*, 2025 WL 4678823, at *7. Here, the ALJ gave a thorough explanation of the VE's testimony regarding data sources and the ALJ's reasons for accepting the VE's testimony, as reproduced in full:

> Pursuant to SSR 24-3p, the vocational expert has identified the data source(s) they relied on and provided their general approach to estimating job numbers. As far as the data sources, the vocational expert used the DOT, the SCO, SOC, their experience, knowledge, and training (Hearing Testimony). These are standard vocational training materials and standard vocational publications. As far as the job numbers, the vocational expert utilized the Bureau of Labor Statistics, evaluating each of the SOC codes under groups, using US Census to gather full-time employment, and uses the estimates accordingly with the ORS[11] as needed consistent with the hypothetical (Hearing Testimony). In ORS, they use ranges in terms of skill, education, and exertion whereas the DOT uses maximum so the vocational expert eliminated the top part of the list to use only SSA levels. While consistent with the DOT, the DOT does not address the reduction to standing and walking for four hours and does address the different frequencies of contact with people. In that regard, the vocational expert used their experience knowledge and training (Hearing Testimony). For the reasons described above, the vocational expert's testimony is accepted in accordance with SSR 24-3p.

AR 34. Plaintiff has not shown error in the ALJ's acceptance of the VE's testimony.

The ALJ's finding that plaintiff could perform 25% of certain categories of light work jobs inherently includes a finding that plaintiff could not perform 75% of those light work jobs. The VE's testimony, and the ALJ's finding, was that even if only 25% of certain categories of light work jobs are available to plaintiff given his functional limitations, that fraction of the total

[11] The court construes the term "ORS" as referring to the Occupational Requirements Survey of the U.S. Bureau of Labor Statistics. See https://www.bls.gov/ors/.

available light work jobs is still significant enough to make plaintiff employable and not disabled. AR 67-73. The ALJ's analysis shows an accurate understanding of the VE's testimony. AR 34.

Plaintiff's arguments regarding the ALJ's consideration of the medical-vocational profiles, the VE's testimony, and the availability of light work jobs that plaintiff could perform, are unpersuasive. The ALJ's reliance on the VE's testimony was proper, and the ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence in the record and the ALJ's analysis.

**B. The ALJ's Assessment of Evidence of Eye and Vision Impairments**

Plaintiff argues that the ALJ's RFC analysis failed to include all his impairments, especially his low vision with sensitivity to light.[12] ECF No. 11 at 9-11. But the ALJ's analysis did address plaintiff's claims regarding his vision. The ALJ concluded that the evidence did not support any further reduction in plaintiff's RFC. AR 27. So long as there is substantial evidence to support it, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation," *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted), and where the ALJ has provided adequate reasons for discounting portions of plaintiff's testimony in making that determination. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Here, plaintiff does not appear to dispute the ALJ's summary of plaintiff's medical history of eye and vision conditions as documented in the record, which was that:

> The claimant also has a history of retinal detachment with bilateral pseudophakia (1F/5, 2F/1). He complained of decreased, blurred vision with sensitivity to light (6F/1, 10F/1, 17F/2, 18F/1). He also reported seeing some floaters (18F/1). He underwent a vitrectomy and was prescribed full-time spectacle correction (4F/22, 9F/22). In October 2022, the claimant had a visual acuity of 20/20 (-2) in the right eye and 20/30 (+2) in the left eye (4F/1). He also had normal visual fields (4F/4).
>
> In August 2023, some scarring was noted in the right eye (10F/3). Visual field testing showed generalized depression in both eyes, but the reliability was limited by excessive false negative errors, which the examiner noted may be attributable to inadequate participation (10F/3). Further, he had full visual fields on confrontation testing (10F/3). Her had an uncorrected visual acuity of 20/60 in the right eye and 20/100 in the left eye (10F/1). Still, the examiner noted that the best correction would remain at 20/40 to 20/50 (10F/3). In August 2024, the claimant had a corrected visual acuity of 20/50 in both eyes (17F/3). That same month, the

[12] Plaintiff does not name any other specific impairments that the ALJ did not include.

> claimant had a visual acuity of 20/70 in the right eye and 20/80 in the left eye, which corrected to 20/70 and both eyes (18F/1, 3). In October 2024, the claimant was diagnosed with cystoid macular edema following surgery of the left eye, which was treated with prednisolone (22F/10). In December 2024, a provider noted that his eye condition was stable (22F/5).

AR 27. Plaintiff does not point to any medical evidence of eye or vision issues that the ALJ omitted from his summary. *See* ECF No. 11 at 9-11. He argues that the ALJ did not address his vision limitations accurately because "[o]bjective testing shows [plaintiff] has had several operations and remains visually limited," *id*. at 10, and that the ALJ summarily dismissed plaintiff's vision test results, *id*. at 11. But the ALJ did describe plaintiff's eye operations and his corrected visual acuity with prescription glasses, as well as his stable eye condition and normal visual fields. The ALJ concluded that plaintiff's visual restrictions did not merit any further reduction in plaintiff's RFC based on the medical records and based on evidence of plaintiff's self-reported activities, as follows:

> Regarding his vision, the claimant wears prescription glasses, so he should be able to wear them without issue. More recently, his corrected visual acuity was to 20/70 in both eyes (18F/1, 3). In December 2024, a provider noted that his eye condition was stable (22F/5). He also had normal visual fields (4F/4). More telling, as far as the reported activities, the claimant indicated that he could drive a car, which involves seeing; can see to pay bills; and count change (4E/4). As such, the evidence is not consistent with the alleged limitations to seeing and no additional limitations are warranted.[13]

AR 27. This is substantial evidence supporting ALJ's finding that plaintiff's ability to see did not warrant assessing any additional work limitations.

Plaintiff also contends that the ALJ failed to address plaintiff's testimony that "his sensitivity to light reduced his ability to work." ECF No 11 at 12, 14-15. The ALJ is not required to discuss every piece of evidence that is not significant or probative, if the ALJ's conclusions are supported by substantial evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

---

[13] Respondent cites other evidence in the record showing plaintiff's additional activities that "required significant use of vision," such as "shopping at the store independently, texting, watching television, completing documentation such as his function report and a consent form, and reading a thermometer." ECF No. 17 at 12, 16 (citing AR 254-61, 284-85, 346, 708, 825, 829).

The testimony in question was that plaintiff's managers prohibited him from wearing sunglasses and/or harassed him for doing so. This testimony only obliquely implied that light sensitivity may have affected plaintiff's ability to work. AR 61-62. Plaintiff had already testified that he left his job of over 20 years primarily because of perceived mistreatment and hostility toward him as an older worker:

> A. I left because of the way they treated me. I couldn't – I felt like somebody was always after me and that they – I had a – the managers were abusing me, and they abused – and they don't like older workers. So, if you're an older worker, they want to get you out. They want the young workers in there. And I just – my health was getting worse. I couldn't perform some of the job duties. I was having a lot of issues like I said. I don't know, it's just the trust in the management as well as I just physically couldn't be doing the job. I was stressed out. I couldn't sleep. The managers were accusing me. I did go to court with EDD[14], and I ended up winning a court thing. And then they – it's – the court ended up saying that – oh, they appealed it and I ended up losing. So it's just –
>
> Q. Okay. So you filed an EDD, and the initial finding was that there was some validity to that?
>
> A. It was regarding customer service and in the law offices of EDD, it was the EDD court, so I ended up losing. But I won the initial initiation for the Judge or whatever there, and then they took it to Supreme and said, no. And then I lost. And then I couldn't appeal that or nothing, so.
>
> Q. Okay.
>
> A. And that was regarding an issue with a customer and a co-worker saying that I didn't help a customer, and I actually did help the customer. And then there was a – it was a racial thing. They said, you know, they said I didn't help this person because I was a color, and they were another color.
>
> And then my managers were the same color, so they ganged up on me and I ended up losing the thing. Losing pay and everything. But they didn't fire me. They just, you know – they never treated – in the last five years they treated me horrible, even though I was one of the best workers there.
>
> And that wasn't all that they did, they did that to all the other workers, and they're still doing it today. And that's what – I have a rapport with my co-workers and my old co-workers, the older ones, and they're slowly retiring out and they're still treating employees like that. And they said, well, you left at the right time because it's getting worse.

AR 57-58.

After further testimony regarding plaintiff's travel activities and his shoulder and back pain, the ALJ inquired about plaintiff's headaches:

---

[14] The court construes this as a reference to plaintiff's claim for disability benefits with California's state disability insurance program. *See* https://edd.ca.gov/en/disability/.

Q. Oh, let me ask you about your headaches. So, are you wearing your sunglasses today to help prevent headaches?

A. Yes.

Q. Okay.

A. Yes, ma'am. For the – I have an eye condition because I had glaucoma. I've had detached retinas, and I've had a lot of issues with my eyes in the military. And it – so that's another thing that when I worked that people were like, why, you know, take off your glasses?
Even my managers were like, you can't wear glasses in here. I go it's a medical condition. And they still would say, well, you can't wear it. And they would harass me with my glasses and stuff like that. Bright light phobia.

Q. Okay.

AR 62-63. Plaintiff's testimony did not explicitly claim that light sensitivity reduced his ability to work and it did not negate or even modify his earlier testimony explaining the reasons he quit his job. His testimony about whether he was allowed to wear sunglasses at work was insufficient to alert the ALJ to the argument plaintiff is now making. His claim of sensitivity to light is also contradicted by other evidence in the record.[15] His sunglasses testimony was not significant or probative and ALJ did not err by omitting to discuss it.

For all these reasons, plaintiff's argument that the ALJ erred by failing to further reduce plaintiff's RFC to account for vision and eye impairments and thereby failed to support his findings at Step Five with substantial evidence, is unpersuasive.

**C. Visual Accuity and the ALJ's Hypotheticals Posed to the VE**

Plaintiff argues that the ALJ failed to pose proper hypotheticals to the VE, because the ALJ did not include diminished visual acuity and sensitivity to light in the hypotheticals. ECF No. 11 at 12-13. Respondent acknowledges that the ALJ's hypotheticals did not include these limitations. ECF No. 17 at 10; *see also* AR 67-73 (VE's testimony). Respondent points out that inclusion was not appropriate because as already discussed the ALJ found that plaintiff's claims

---

[15] Respondent points out that plaintiff had denied sensitivity to light in a May 2023 consultative examination. ECF No. 17 at 10 (citing AR 487). And respondent notes other evidence in the record confirming plaintiff's testimony that he quit his job because he did not get along with his managers. *See id*. (citing March 14, 2023 function report completed by plaintiff's mother, at AR 285).

of vision limitations were not supported in the record and therefore were not a proper basis for any further reduction of plaintiff's RFC. *Id*. (citing *Thomas*, 278 F.3d at 956).

Plaintiff argues that the light duty jobs identified by the VE and relied upon by the ALJ require visual acuity that he does not have. ECF No. 11 at 12-13. He maintains that these jobs "require clarity of vision at 20 inches or less" and that these jobs "exceed his range of vision." *Id*. at 13. As noted above, plaintiff attaches an Exhibit A, that he describes as "DOT and Department of Labor Definitions," which states occupational requirements for jobs of routing clerk, marker, and small products assembler that "frequently" require clarity of vision at 20 inches or less. ECF No. 11 at 18-21; *see also id*. at 24 (near acuity and clarity of vision at 20 inches or less is required for activities such as entering numerical data in bookkeeping ledgers).[16]

But plaintiff fails to show how his medical records, or even his own testimony, supports a contention that he actually lacks sufficient prescription eyeglass-corrected clarity of vision at 20 inches or less.[17] *See* AR 27 (the ALJ's finding at Step Five that "[r]egarding his vision, the claimant wears prescription glasses, so he should be able to wear them without issue"). For the reasons already discussed, plaintiff similarly fails to support his contention that sensitivity to light is a limitation supported in the record and that should have been presented to the VE.

////

[16] Plaintiff also cites a "research paper" as support for his assertion that certain light duty jobs require clarity of vision at 20 inches or less. ECF No. 11 at 13 (citing https://www.bls.gov/osmr/research-papers/2014/pdf/stl140080.pdf). The court has attempted to locate this authority to address plaintiff's argument as thoroughly as possible. When copied onto an open browser tab, the web address provided by plaintiff brings up a webpage of the U.S. Bureau of Labor Statistics which states "Sorry, the page you are looking for cannot be found." https://www.bls.gov/osmr/research-papers/2014/pdf/stl140080.pdf. Even though there is no obvious hyperlink in plaintiff's motion, clicking the citation in plaintiff's motion surprisingly brings up a document titled "Estimation Considerations for the Occupational Requirements Survey" and bearing the date "October 2014." The introductory paragraph explains that "[i]n the summer of 2012, the Social Security Administration (SSA) and the Bureau of Labor Statistics (BLS) signed an interagency agreement to begin the process of testing the collection of data on occupations." The document then reports the status of the data collection project. The court finds no support for plaintiff's argument in this document.

[17] Plaintiff's concurrent assertion that he "does not have clarity of vision at 20 feet or less," ECF No. 11 at 13, is apparently a typographical error, and is also contradicted in evidence cited by the ALJ that plaintiff drives a car, pays bills, and counts change. *See* AR 28 (ALJ citation to record at 4E/4); *see also* ECF No. 8-7 at 42 (4E/4 function report dated March 11, 2023 in which plaintiff reported these activities).

Hypothetical questions posed to a vocational expert need not include limitations that are not supported in the record. *Blansette v. Berryhill*, 721 F. App'x 715, 716 (9th Cir. 2018); *see also Engelhardt v. Colvin*, 588 F. App'x 551, 552 (9th Cir. 2014) (it was not error that a hypothetical excluded a bone protrusion in the claimant's right foot, because the record did not show that it "caused any limitations beyond those recognized in the residual functional capacity" (citing *Thomas*, 278 F.3d at 956, and 20 C.F.R. § 416.920(a)(4)(iv)-(v))); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (hypothetical was sufficient because it included all the limitations the ALJ found credible). For all the reasons discussed above, plaintiff's arguments regarding eye and vision limitations and/or light sensitivities and/or light work job requirements regarding vision at 20 inches or less are not supported in the record, and the ALJ did not err by failing to include these in the hypotheticals posed to the VE.

**D. Plaintiff's Argument Regarding His Subjective Statements**

Plaintiff's final argument takes an unexpected turn in that it alludes to plaintiff's testimony regarding pain, rather than continuing with his issues related to vision. He argues in a conclusory manner that the "ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." ECF No. 11 at 14 (citations omitted). He maintains that "the ALJ lists [plaintiff's] statements but does not provide specific citations to discredit those statements." *Id*. Plaintiff does not explain which statements he alleges the ALJ did not address, and he ignores the ALJ's citations to evidence in the record. He continues in similar conclusory fashion to claim that "[t]he ALJ makes independent conclusions that because [plaintiff] went on a plane and ship, this conflicts with his statements, but does not explain his rationale." *Id*.

Contrary to plaintiff's assertions, the ALJ identified evidence in the record relevant to plaintiff's complaints of back and neck pain and left shoulder pain, AR 25-26, weighed the evidence against plaintiff's subjective complaints, and assessed that:

> The overall evidence, including the claimant's reported pain, imaging showing degenerative changes, exam findings noting decreased spinal and left shoulder range of motion, notations of a limp and positive straight leg raise testing, the

> reported difficulties at the hearing, and the overall treatment supports a limitation to the light work except stand and walk for four hours total during an eight-hour day; sit for six hours total during an eight-hour day; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

AR 27. The ALJ further concluded that:

> However, no additional limitations are supported and the claimant's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the evidence. Despite his reported neck and back pain, the claimant repeatedly appeared in no acute distress (3F/3, 7, 11, 26F/4, 28F/7, 29F/2, 32F/5). Imaging did not show any nerve root or spinal cord compromise (19F/2-3). There was also no recommendation for surgical intervention. Regarding his left shoulder, there was no recommendation for surgical intervention, and, at times, he had normal range of motion (6F/3, 17F/3-4).
>
> Despite his reported difficulties with standing and walking, at most exams, the claimant had a normal gait (3F/7, 12, 16F/3, 17F/3, 21F/3, 24F/4, 26F/4). He did not use any assistive device on exam (3F/7, 12, 17F/3, 24F/4, 26F/4, 31F/6, 24). Although he alleged limitations to lifting and reaching, at most exams, no strength deficits were noted (3F/7, 12, 26F/4, 30F/69). At times, he had intact sensation (3F/12, 24F/15, 30F/69, 32F/68). The claimant also engaged in a robust variety of activities, including travel. Specifically, he took a flight to Florida, from where a cruise began, and travelled to Vegas, which involve walking, carrying luggage, and the mental fortitude to navigate the airport and cruise ship (Hearing Testimony). This is also inconsistent with the reported need to use the restroom every hour.

AR 28. The ALJ explained her credibility determinations and gave adequate reasons supported by substantial evidence in the record for not fully crediting plaintiff's testimony. The court therefore upholds the Commissioner's decision. *See* 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99; *Thomas*, 278 F.3d at 954.

Plaintiff's separate, single paragraph argument referencing the "credit as true doctrine" likewise fails to identify any specific testimony that the ALJ allegedly failed to consider, and it also fails to carry plaintiff's burden to explain his position and his argument. *See* ECF No. 11 at 14-15; *Shinseki*, 556 U.S. at 409. Plaintiff asserts that the ALJ rejected unspecified testimony about the severity of unspecified symptoms "without offering specific, clear and convincing reasons for doing so," but plaintiff does not cite any specific instances where this occurred. *Id.* at 14. In equally conclusory fashion, he states that he provided unspecified testimony that has not been contradicted and that is supported by unspecified doctor's reports. *Id.* at 15. The court construes plaintiff's separate "credit as true" argument as, at most, elaborating plaintiff's

arguments he has separately presented regarding his eye and vision impairments and light sensitivity and the light duty jobs available to him. The argument is unpersuasive.

In sum, plaintiff fails to show that the ALJ's decision lacks substantial evidence to support it. *See* 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99; *Thomas*; 278 F.3d at 954.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is GRANTED;

3. The Clerk of the Court shall enter judgment for defendant

Dated: September 18, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE